22909.  SHEPARD *v.* MOULTRIE BANKING COMPANY
*et al.*

DECIDĒD JANUARY 10, 1934.

*J. O. Gibson, Perry & Tipton,* for plaintiff in error.
*Hoyt H. Whelchel, W. G. Martin,* contra.

BROYLES, C. J.  On January 3, 1921, J. B. Shepard, A. H. Hancock, W. M. Smith, C. W. McWhite, P. B. Watkins, and J. Idelson (stockholders and directors of the Bank of Doerun, Georgia) executed to the National Park Bank of New York a contract of continuing guaranty for the purpose of establishing a credit with that bank for the Bank of Doerun.  On December 10, 1921, A. H. Hancock, one of the signers of the guaranty contract, died, and his entire estate was set aside to his widow for a year's support.  In 1923, J. B. Shepard, one of the signers of the guaranty contract and now plaintiff in error, resigned as a director of, and severed all connection with, the Bank of Doerun, at a time when the bank owed the National Park Bank nothing.  On September 14, 1926, about three years after Shepard had severed his connection with the Bank of Doerun, and more than five years after the aforesaid guaranty contract had been executed, the Bank of Doerun obtained a loan from the National Park Bank and gave a note for $2500 to that bank.  This transaction was without the knowledge of Shepard.  On October 1, 1926, the Bank of Doerun was taken over by the State Superintendent of Banks.  The Bank of Doerun at that time owed the National Park Bank $2212.49 on the $2500 note.  About October 18, 1926, a Mr. Jelliffe, vice president of the National Park Bank, went to Doerun and made demand upon all the living guarantors, except J. B. Shepard, to make good the said indebtedness of the Bank of Doerun to the National Park Bank.  No demand was made upon J. B. Shepard. Thereupon McWhite, Smith, and Watkins, directors of the Bank of Doerun and signers of the guaranty contract, approached the cashier of the Moultrie Banking Company with reference to advancing money to pay the indebtedness due the National Park

Bank. Idelson, also a director and guarantor, was not with them at that time, "but they represented that he would also sign the note." The four directors, McWhite, Smith, Watkins, and Idelson, procured a loan from the Moultrie Banking Company of $2212.49, and after they, as individual and joint makers, gave the Moultrie Banking Company a note for that amount, that bank remitted the proceeds of the loan to the National Park Bank, being the full amount due that bank by the Bank of Doerun. The National Park Bank then turned over the $2500 note to the Moultrie Banking Company with the following entry thereon: "Pay to the order of Moultrie Banking Company without representation or warranty of any kind and without recourse to the undersigned for any cause whatsoever. The National Park Bank of New York, By Walter S. Jelliffe, Asst. Vice President." The National Park Bank also assigned to the Moultrie Banking Company the guaranty contract dated January 3, 1921. The $2212.49 note given by the four directors to the Moultrie Banking Company was executed between October 18th and 27th, but was dated October 15, 1926, to facilitate the running of interest. Shepard did not sign the note to the Moultrie Banking Company, was not asked to sign it, and all of these proceedings were without his participation or knowledge. After the note given to the Moultrie Banking Company became due and was not paid, that company brought suit on the original guaranty contract, and named Shepard as one of the defendants. Shepard (the only defendant who filed any pleadings) answered that he was not indebted; pleaded payment and satisfaction of the debt on the ground that "long before the execution by said Bank of Doerun of the said $2500 note, dated September 14, 1926, this defendant sold his stock in said Bank of Doerun to the other defendants herein named, retired from said bank, severed his connection therewith, and terminated his interest therein, at which time the Bank of Doerun was not indebted to said National Park Bank on any account in any manner," and that "on or about October 26, 1926, the defendants McWhite, Watkins, Idelson, and Smith paid off and fully discharged said note of $2500, paying said National Park Bank the full amount of the balance due thereon, and that in consideration of such payment said note was surrendered by said bank to said other defendants; . . that such payment by said other defendants amounted

to a satisfaction and discharge of said note and any claim of the National Park Bank thereon, so that thereafter it held no debt or obligation against said Bank of Doerun to be guaranteed or capable of being guaranteed by said agreement on January 3, 1921; and this defendant avers that any subsequent transfer or assignment of said note and agreement, purporting or attempting to be made by said National Park Bank, was ineffectual to transfer or to create any valid obligation in favor of the plaintiff [Moultrie Banking Company];" and "that the plaintiff had actual knowledge of the payment and satisfaction of said note, for that said other defendants had on October 26, 1926, borrowed from the plaintiff the money with which to pay off said note and with which it was actually paid off as aforesaid, and that the plaintiff handled for said other defendants said transaction and remitted for them said funds to said National Park Bank," and took from the said four defendants their note for the amount remitted to the New York bank. Shepard also filed a plea of novation and new agreement alleging that the latter note was a distinct and different type of obligation. He also filed a plea of discharge, alleging the release of his co-guarantors. After the introduction of evidence the court directed a verdict in favor of the plaintiff against all the defendants. Shepard made a motion for a new trial, which was overruled, and he excepted.

For the purpose of this decision we will concede, but not decide, that even though the Bank of Doerun owed nothing to the National Park Bank at the time that Shepard severed his connection with the Bank of Doerun, and even though the $2500 note was given to the National Park Bank approximately three years after Shepard had severed his connection with that bank, and more than five years after Shepard had signed the guaranty contract of January 3, 1921, that contract was of force at the time the $2500 loan was made. This being conceded (though not decided), the controlling question before this court is whether there was sufficient evidence to authorize submission of the case to a jury to determine whether the debt alleged to be due to the plaintiff was in fact the debt of the other four defendants on their note to the Moultrie Banking Company, or was the balance due on the $2500 note given by the Bank of Doerun to the National Park Bank and covered by the contract of guaranty dated January 3, 1921; or, to state it differently, was the $2500

note paid by the Moultrie Bank or by the aforesaid four defendants?

The contract of the guarantor is separate and distinct from the contract of the debtor, and they can not be sued jointly. "The two contracts are several, not joint, and the liability on each is several. Those who contracted the account are not liable at all on the guaranty, and he who made the guaranty is not liable at all on the account." *Sims* v. *Clark,* 91 *Ga.* 302, 304 (18 S. E. 158) ; *Musgrove* v. *Luther Publishing Co.,* 5 *Ga. App.* 279 (63 S. E. 52). Under this ruling Smith, McWhite, Watkins, and Idelson on their separate obligation were joint guarantors to the bank and joint principals as between themselves, and in neither event could Shepard be sued with them. Shepard was bound only on his contract of guaranty, and the debt sued on must be one covered by that contract of guaranty in order to hold him liable. He certainly did not guarantee the debt of the other four defendants to the Bank of Moultrie. If the debt secured by the contract of guaranty executed in January, 1921, was paid by the four defendants (other than Shepard) with the proceeds of a loan made to them by the Moultrie Banking Company, and for which the Moultrie Banking Company took their note as the *primary obligation* due the Moultrie Banking Company, and the Moultrie Banking Company, acting for the four defendants, remitted to the National Park Bank the proceeds of the loan so made, to satisfy the demand made on the four defendants under their original guaranty contract of January 3, 1921, and this was all that was due the National Park Bank by the Bank of Doerun, then the debt of the National Park Bank was satisfied and the contract of guaranty executed in January, 1921, by Shepard and the other defendants had served its purpose and was functus officio. Nelson *v.* Webster (Neb.), 68 L. R. A. 514, and cit. The four defendants were already bound by their original guaranty contract of January, 1921, for the debt of $2500 (less credits) alleged to be transferred by the National Park Bank to the Moultrie Bank together with the guaranty contract; and, this being true, why was it necessary for the Moultrie Bank to take from the four defendants an additional obligation for the same amount in order to bind them?

The following evidence, if believed by the jury, has probative value to the effect that the $2500 note due the National Park Bank was really paid by the four defendants with the loan which they

procured from the Moultrie Banking Company, and if so, the contract of guaranty signed by Shepard and others, upon which suit was brought, was functus officio and not actionable: M. L. Lee, witness for the plaintiff, testified: "I am cashier for the Moultrie Banking Company, and was its cashier in 1926. I was approached as cashier of the Moultrie Banking Company in the year 1926 by Mr. G. W. McWhite, Mr. W. M. Smith and Mr. P. B. Watkins with reference to advancing money to pay an indebtedness of the Bank of Doerun to the National Park Bank of New York. Mr. Walter S. Jelliffe, vice president of the National Park Bank, was present during the discussion or negotiations for arranging this indebtedness. . . I believed that the money would be advanced . . provided that the guarantors who were present at the time of the negotiations would execute their note to the Moultrie Banking Company with the collateral held by the New York Bank pledged to the Moultrie Banking Company. Mr. Jelliffe delivered the note of the Bank of Doerun and the guaranty contract to me. . . I understand Mr. Shepard has not been a director of the Bank of Doerun since sometime in 1923. *He was not one of the men who approached me to obtain this loan.* . . The bank itself was not interested in taking up these papers of the New York bank, but only at the request of McWhite and others. *There was no desire upon the part of the Moultrie Banking Company, as an original proposition, to substitute itself for and place itself in the same situation as the New York bank.* I was approached by the three directors named. We did not know who they were acting for other than themselves. Mr. Idelson was not with them, but they represented that he would also sign the note. . . They (the three directors named) told us that the representative of the New York bank was here with the papers, and was calling on *them* to satisfy their guaranty to the New York bank. That is what they told us they wanted with the money. *We loaned the money to Mr. Smith, Mr. McWhite, Mr. Watkins and Mr. Idelson, and took their note for the loan.* . . The $2212.49 that this note represents was the loan made to the four signers of the note, and after that the bank remitted *the proceeds of the loan* to New York, which was the full amount of the debt to the New York bank owing by the Bank of Doerun. *This remittance was made at the instance of those four men* signing the note to the Moultrie Banking Company, and was

not made to the New York bank until this note had been signed and delivered to the Moultrie Banking Company and accepted by it. This note for $2212.49 signed by the four directors named was entered on our note ledger and is carried on our books as the *primary obligation* owing our bank. We made a record of this note on the discount register and the liability register. We did not enter this guaranty contract sued on on any of these records. . . We did not deal with Mr. Shepard at all in any of these matters. This note to the Moultrie Banking Company was due January 15, 1927, and was not paid to us at the time it was due. We never called on Mr. Shepard to pay this note until at least two years after it was due, and never demanded payment of Mr. Shepard until after some of the makers of this note asked us to see if we could not require him to pay on the old contract of guaranty." It will be noted, from the foregoing evidence, that the plaintiff bank carried the note of these four defendants as the "primary obligation" owing the plaintiff bank. Mr. Shepard testified: "I am one of the defendants in this case and one of the signers of the contract herein sued on. At the time this contract was signed I was a director of the Bank of Doerun, but I was not a director or otherwise connected with the Bank of Doerun at the time the note for $2500, dated September 14, 1926, and described in plaintiff's petition, was given by the Bank of Doerun to the National Park Bank of New York. I severed my connections with the Bank of Doerun sometime during the fall of 1923. The Bank of Doerun had possibly owed the National Park Bank something at the time when I was a director, but everything that the Bank of Doerun owed this bank was paid at that time. I knew nothing about the money which was loaned to the Bank of Doerun and did not have anything to do with the loan procured by Messrs. Smith, McWhite, Idelson, and Watkins from the Moultrie Banking Company. I had no knowledge of and knew nothing about the Bank of Doerun procuring this last loan involved in this case from the New York bank."

The evidence raised an issue of fact as to whether the four defendants (other than Shepard), after procuring a loan from the Moultrie Bank, paid, through the agency of that bank, the debt due the National Park Bank with the proceeds of that loan, and thus rendered the guaranty contract signed by Shepard and themselves functus officio.

The evidence having raised an issue of fact which should have been submitted to the jury with appropriate instructions, the court erred in directing a verdict for the plaintiff.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*